*531 OPINION OF THE COURT
Michael D. Stallman, J.
Plaintiff moves[1] for an order of seizure pursuant to CPLR 7102 (a), seeking to recover various pieces of restaurant equipment. Plaintiff claims it is entitled to replevin and a pendente lite order of seizure of the chattels because it has a security interest in this equipment. Defendant Loudas opposes this application on the grounds that several of the UCC-1 financing statements produced by plaintiff in support of its contention that it has a security interest in the equipment list a non-party, Twin Donut, Inc., and not plaintiff, as the secured party. Defendant 397 Eighth Avenue (landlord) also opposes this motion, asserting that it has a superior right to the chattels pursuant to a lease which predated the security agreements relied on by plaintiff. However, the landlord has not cross-moved for an order of seizure. Loudas cross-moves to dismiss the complaint against him.
In March 1989, landlord entered into a written lease for a 10-year term with Twin Donut Stores, Inc. (now known as TDS Leasing Corp.), whose sole shareholder is George Psathas, who is also the sole shareholder of the plaintiff, for the storefront at 401 Eighth Avenue in Manhattan. A memorandum of lease was apparently executed by the signatories to this lease but no evidence has been presented to the court that it was ever filed.
Plaintiff performed construction work at the premises for defendant Modas Rest., Inc., a subtenant doing business as "Twin Donuts” at the premises pursuant to a franchise agreement produced by plaintiff. Dimitrios Loudas, as president of Modas Rest., Inc., granted plaintiff a security interest in the fixtures, chattels and equipment to secure payments of a *532 promissory note dated November 28, 1990; this security agreement was apparently filed several days later.
On or about August 8, 1992, Modas Rest., Inc. was evicted from the premises for nonpayment of rent. Plaintiff claims that when Modas subsequently defaulted in payments on the promissory note plaintiff became entitled to immediate possession of the restaurant equipment, but despite due demand upon the defendants to return the equipment to plaintiff, defendants have refused to turn over the equipment. Plaintiff commenced the underlying replevin action simultaneously with service of this order to show cause in November 1992. Defendant Modas Rest., Inc. has neither answered nor appeared.
In order to obtain an order directing seizure of property prior to judgment, movant must demonstrate, inter alia, that it is probable that it will succeed on the merits of the underlying action to recover the chattel. (CPLR 7102 [d].) The issue in an action to recover a chattel is whether the plaintiff or the defendant has the superior possessory right. Here, plaintiffmovant asserts that its superior right is based upon a security agreement for equipment and fixtures made between plaintiff and Modas Rest., Inc. and a franchisee store lease agreement between Twin Donut Stores, Inc.[2] and Modas Rest., Inc. Plaintiff contends that pursuant to the terms of the security agreement, plaintiff’s right as a secured party to recover the chattels upon default has been adequately established.
However, of the six UCC-1 financing statements provided by plaintiff in support of its position, all bearing the identical, vague description of the property as "fixtures, chattels and equipment located in premises 401 8th Avenue, N.Y., N.Y.”, four of the statements list Twin Donut, Inc. as the secured party while only two list plaintiff as the secured party.
The movant has a heavy burden to demonstrate its entitlement to a provisional remedy, especially one as drastic as pretrial seizure of the very chattels that are the subject of the replevin action. This court cannot say as a matter of law, based on the inadequate, ambiguous and conclusory showing, that movant is entitled to immediate possession, pendente lite, of these items.
*533 Neither has the landlord demonstrated a superior right to possession. Indeed, the lease provision cited by landlord may well militate against the landlord’s position. The landlord’s defense to this action is based on the following portion of paragraph 3 of the lease: "All fixtures, and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner in Tenant’s behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice of Tenant no later than two days prior to the termination of the lease, elects to relinquish Owner’s rights thereto and to have them removed by tenant”.
However, paragraph 3 concludes with a provision not quoted by any of the parties: "Nothing in this article shall be construed to give Owner title to or to prevent Tenant’s removal of trade fixtures, moveable office furniture and equipment” (emphasis supplied).
Although this paragraph provides that fixtures, upon installation, become the property of the owner and shall be surrendered with the premises, it specifically excludes trade fixtures, moveable office furniture and equipment. A "fixture” is "[a]n article in the nature of personal property which has been so annexed to realty that it is regarded as a part of the real property.” (Black’s Law Dictionary 638 [6th ed]; see, 59 NY Jur 2d, Fixtures, § 1.) By virtue of its affixation to realty, a fixture loses its identity as distinct personal property and cannot be the subject of CPLR article 71 relief; article 71 applies only to chattels, i.e., personal property, not real estate and fixtures that have merged with the land. (See, Stallman, Weinstein-Korn-Miller, CPLR Manual, § 30.01 [Chase, Stall-man 1992 rev 2d ed].) "Trade fixtures” are those chattels annexed to the leased premises by the tenant for purposes of trade or business, which the tenant has the right to remove provided such right is exercised within a proper time. (See, Annotation, 6 ALR2d 322, § 1; 59 NY Jur 2d, Fixtures, § 29.)
Conspicuously absent from any of the papers before the court is any evidence or discussion of whether the items listed are fixtures or trade fixtures. Curiously, none of the papers even mention the term "trade fixture” even though the paragraph relied on by the landlord contains that term and distinguishes a trade fixture from a fixture.
*534 A review of the inventory of chattels[3] reveals that the items identified appear to be trade fixtures, restaurant equipment or supplies; by their description and nature they do not appear to be "fixtures” as claimed by the landlord. However, it is now unnecessary and premature to hold a fact-finding hearing to determine if these chattels are fixtures or trade fixtures.
The landlord has not cross-moved for an order of seizure, and is not entitled to possession of any of these chattels at this time. There appears to be no basis for the landlord’s assertion of a superior right to possession as to practically all of the items. However, since plaintiffs entitlement to a provisional order of seizure is the only issue properly before the court in this motion, and not final determination of the replevin action, this court does not by this order pass upon the right of any party to ultimate possession of any of the items at issue.
In sum, plaintiff has not met its burden of proof for an order of seizure. Particularly in light of the vague and conflicting information in the UCC-1 filings, plaintiff has not demonstrated a probability of success on the merits. It is possible that Twin Donut, Inc. may have rights in the chattels superior to, or otherwise in conflict with those of plaintiff. Notwithstanding the apparent common principal of Twin Donut, Inc. and plaintiff at the time of the underlying transactions, Twin Donut, Inc. has an independent corporate identity and appears to be a necessary party. Moreover, the vagueness of the UCC-1 filings ("fixtures, chattels and equipment located in premises 401 8th Avenue, N.Y., N.Y.”) does not alone prove entitlement to the entire inventory of chattels claimed by movant in its papers. In the absence of any other appropriate request for relief, this court cannot make any other interim disposition of property.
The parties having possession and access to the property, however, must be on notice that they may have liability should they convert or damage the property to the detriment of the party ultimately found to be entitled to it. The court does not pass on such questions of liability.
Loudas’s cross motion to dismiss the complaint as against him pursuant to CPLR 3211 (a) (3) (no legal capacity to sue), CPLR 3211 (a) (7) (failure to state a cause of action), CPLR 3211 (a) (8) (no personal jurisdiction) and CPLR 3211 (a) (10) (absence of necessary party) is denied.
*535 Loudas’s traverse defense was dismissed on June 23, 1993 based upon his failure to appear for the traverse hearing.
In support of his argument that the complaint fails to state a cause of action against him personally, Loudas asserts that he signed all relevant documents as president of Modas Rest., Inc. However, the complaint alleges that Loudas, inter alia, wrongfully detained the subject chattels; the affidavits contain allegations that Loudas, or some other entity that he controls, has been and is currently in possession and using or controlling the property. (See, Psathas affidavit, Nov. 5, 1992, para 18.) In light of the factual questions raised regarding Loudas’s involvement, the complaint sufficiently states a cause of action against him in his individual capacity.
Plaintiff clearly has standing to bring this action. The proof submitted sufficiently indicates that plaintiff has an interest in the property. The litigable interests of Twin Donut, Inc. and other parties do not preclude plaintiff from asserting its rights. Rather, the factual questions raised require a trial, not summary disposition in favor of any party.
Plaintiff has submitted a copy of a demand letter for the property dated May 29, 1992, allegedly sent to Modas Rest., Inc. This letter sufficiently shows a triable factual question requiring denial of Loudas’s motion to dismiss the complaint on the ground of waiver or abandonment.

. This motion first appeared before this court at Special Term, Part II on April 28, 1993. This court held that the service issues raised by defendants required a traverse hearing and scheduled the case in Special Term, Part II for a traverse hearing and final determination. 397 Eighth Avenue withdrew its application for a traverse hearing. On June 23, 1993 (when this part was closed for vacation), the Judge then sitting at Special Term, Part II referred this motion to this court after Loudas failed to appear for the traverse hearing. That decision stated: "Defendant Modas Rest. Inc.’s request for a traverse hearing is denied for its failure to appear.” Because Modas Rest., Inc. never appeared or answered and because it was defendant Loudas (principal of Modas Rest., Inc.) who had cross-moved to dismiss, asserting a traverse defense in his individual capacity, it is evident that it was Loudas who did not appear at Special Term, Part II and that it was his traverse defense which was stricken.

. Even though plaintiff was not a party to the lease, its principal George Psathas signed the lease as president of Twin Donut Stores, Inc. Plaintiff, through the actions of Psathas, must be deemed to have had notice of the lease terms, and is bound by them.

. See, Appendix 1 (omitted for purposes of publication).